THE TOWNS OF WARDSBORO AND TOWNSHEND v. THE TOWN OF JAMAICA.

[IN CHANCERY.]

*Interference of chancery in proceedings respecting highways.*

A court of equity will not interfere to enjoin a proceeding in the county court discontinuing and relaying a highway, upon the ground that it was procured by one town, to enable them to maintain a petition, under the statute, against other towns, for aid in maintaining a bridge upon such highway; the other towns having had no notice of such proceedings until the service of the petition upon them for their assessment toward the expense of said bridge.

The bill charged that in October, 1828, a road was laid by the road commissioners, from Wardsboro to Jamaica, crossing West River in Jamaica, and that Jamaica built their part of the road and the bridge across the river, and kept the same in repair till after the passage of the act of November 15, 1847, which made other towns benefited liable to be assessed for the building or repair of any road or bridge laid by the county or supreme court; the bridge then requiring to be rebuilt, Jamaica for the purpose

of bringing the case within the terms of the law of 1847, secretly and fraudulently procured a petition to be entered in the county court at the April Term, 1848, for the discontinuance of said road and bridge, and laying another, and had commissioners appointed who were called out, unknown to the orators, and discontinued the old road and bridge and laid another in the same place, and that their report was accepted by the county court, at the September Term, 1848, without the attention of the court being called to it, and without the knowledge of any one except those in the interest of Jamaica, and that Jamaica paid all the expenses.

The orators insisted that they were not liable to contribute to the building of the bridge ; that the public good did not require the discontinuance and relaying of said road in the same place, and that these proceedings were fraudulently had by Jamaica, for the sole purpose of making the orators liable under the act of 1847 ; that at the April Term, 1849, Jamaica brought their petition against the orators, and commissioners were appointed, who reported at the September Term, 1849, assessing Wardsboro two-twelfths, and Townshend three-twelfths of the expense of building said bridge ; that the orators being unable to prove the fraud as above stated, the report was accepted ; that Jamaica had built the bridge expensively, and threatened to make the orators pay each their proportion of the expenses as ordered by the court.

The orators insisted that the two judgments were obtained fraudulently, and for the purpose of charging them with a liability which otherwise did not exist; and prayed that said judgments might be declared null and void, and Jamaica enjoined from prosecuting the suits for the recovery of the proportion of the expenses assessed to each of said towns, and for further relief.

The defendants answered that the road was laid by the road commissioners, in 1828, and that they, (the defendants) kept the bridge in repair until it was carried away by a freshet, when it was necessary it should be rebuilt and put in the best place ; that upon a petition for that purpose, commissioners were appointed, who, by their report, discontinued the road laid by the road commissioners, and laid a new road across the river, that the report was accepted; that the orators not being parties and having no legal claim to be made such, were not notified and took no part in these

proceedings. They denied that any particular secrecy was used or that the court did or could have silently accepted the report, and made their order without their attention being called to it, and insisted that the proceedings were usual and regular, and without fraud. They admitted that they approved of the petition &c., and paid the expenses. They also admitted the bringing the petition against the orators for assessing them towards building the bridge, and averred that the orators appeared by their attorneys, and had opportunity to make objections to the legality, &c., of the discontinuance and location, and having omitted to do so, ought to be concluded; they further admitted the appointment of commissioners; and that they reported that the defendants were excessively burdened, and the orators specially benefited, by the building of said bridge, and assessed the expense as alleged; that the orators appeared by their attorneys and resisted the acceptance of the report, and that it was accepted. They denied any fraud in procuring said judgment, and insisted that it was conclusive. They admitted the building of the bridge, and that suits have been brought to recover of the orators their proportion of the expense, but denied any improper or unnecessary expense in building it.

The answer was traversed, and testimony was taken, the result of which is sufficiently stated in the opinion of the court. The court of chancery at its September Term, 1854, dismissed the bill, from which the orators appealed.

*A. Keyes* and *D. Kellogg* for the orators.

*W. C. Bradley*, for the defendants.

The opinion of the court was delivered, at the circuit session in September, by

REDFIELD, CH. J. There is very little controversy in regard to the facts in the present case. The road was originally laid by the county commissioners, and the bridge is situated in Jamaica. The expense of erecting the bridge could not therefore have been apportioned among the several towns interested under the statute of 1847, which only extended to bridges upon roads laid by court's committees. Hence the resort to the finesse of calling out a court's committee, to discontinue the road laid by the commissioners, and

relaying it upon the same ground mainly.   We entertain no doubt this was the prevailing motive for the proceeding, notwithstanding slight alterations and acknowledged improvements.   Without the former motive, the latter objects would probably have been attained in some more natural and less expensive proceeding.   This is so obvious as not to justify debate.

But upon the question how far such a course is, under the circumstances, justifiable, there seems to be some ground for debate.   Some men would regard it shrewd, and the more creditable for its very duplicity and indirection.   Others might characterize it as evasive, sinister and perhaps fraudulent.   Some honorable men would do it, and others, not more so, perhaps, would decline to have any agency or complicity in the transaction.   For one, I must say, I think the affair more in character with the labor-saving operations of modern inventions, than with the old-fashioned, straight-forward, hand-work of the generation now passing off the stage, under the stigma of some, not very flattering or complimentary cognomens.   It is not needful further to characterize the proceeding.

We are all agreed that it is not one of those proceedings, which a court of equity, in the exercise of a prudent and reasonable discretion, should set aside.   It is confessedly legal and binding upon the parties unless set aside by the court of chancery.   It was obtained, in the ordinary course of judicial proceeding, under the statute, all parties, entitled to notice, being properly served with process.   But it is claimed to be inoperative as to these plaintiffs because it was induced by a wrong motive, that is, to charge them with a portion of the expense of maintaining this bridge when otherwise they could not be thus charged.   But this is not shown to be an inequitable and unjust result.   For they could only be charged with an equitable and just proportion of maintaining the bridge, after all legal impediments were removed.   But it is claimed, and is shown to the satisfaction of the court, that this was done to remove a legal impediment, in the way of obtaining any decree of apportionment.

And we think it will not be found any just ground, to deny the party the benefit of such transaction, that it was resorted to for the purpose of converting an equitable and imperfect demand into a legal right.   This is done, more or less, almost every session of the legislature, by means of special legislation, which if it were in

terms confined to the cases, mainly intended to be affected, by the statutes, would defeat its leading purpose, by thus becoming unconstitutional and void, as not properly amounting to an act of legislation, but being rather in the nature of a decree. But the statute, for that reason, is made general, although intended for a particular case. We do not suppose any court of equity, would therefore, feel justified, in enjoining the party, thus indirectly procuring the act, from taking the benefit of it And such cases are, in principle, very similar to the present.

Upon general principles, the plaintiffs, not being parties to the proceedings in the county court, by which the road was discontinued and relaid, would not be concluded by the judgment thereon, but might contest it, upon its merits, in any future proceedings where it should be relied upon, and so might have had the full benefit of the alleged fraud in this transaction, upon the hearing on the petition to apportion the expense of the bridge.

But it is argued, that this discontinuance and relaying of the highway, is so far in the nature of a proceeding *in rem*, that the defense of fraud, in obtaining the decree, is excluded as to strangers, as well as the parties notified, and in court. It is true, no doubt, that such is the general rule, as to judgments, strictly *in rem*, and the laying out of a highway, as to its binding force upon the whole world, partakes very considerably of a proceeding *in rem*. But we are not aware that courts of equity have ever attempted to set aside, or enjoin, the adjudications of courts proceeding *in rem*. Such courts have a supervisory control over their own judgments, and upon petition of parties alleging fraud, or injurious effect, resulting from such judgments, will re-examine the grounds upon which they were had. This is done in admiralty and prize courts, and in courts of probate. But as a general thing, certainly, courts of equity do not interfere with proceedings in such courts, unless where their powers are confessedly inadequate to accomplish the desired end. And in a case like the present, involving the supervision and control of the highways, in the state, a court of equity certainly would not interfere, except upon the most unquestionable grounds, both in law and in fact, neither of which are satisfactorily established in the present case.

Decree affirmed and case remanded to the court of chancery.